## UNITED STATES DISTRICT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

DEREASE L. IRONS,
    Plaintiff,

Case No.: _5.22cv113-TKW-MJF_

v.

SECRETARY FLORIDA DEPT.
OF CORRECTIONS RICKY DIXON,
IS SUED IN HIS OFFICIAL CAPACITY
AND INDIVIDUAL CAPACITY, and all
other officers of the FDOC named in
this complaint is sued in his individual
and official,
    Defendant's

_____/

PROVIDED BY
LIBERTY CI
MAR 1 8 2022
FOR MAILING

### JURY TRIAL DEMANDED

### VERIFIED COMPLAINT FOR DAMAGES
### AND INJUNCTIVE RELIEF.

### I. INTRODUCTION

1.) This is a § 1983 action filed by Plaintiff Derease L. Irons, a state prisoner,

alleging violation of his Constitutional rights to receive protection from inmate

assaults and seeking a Temporary Restraining Order and Preliminary Injuctive

Relief and Permanent Injunctive relief. and money Damages.

### II. JURISDICTION & VENUE

2.) This is a civil action authorized by 42 U.S.C. Section 1983 to redress the

deprivation, under color of State law, of rights secured by the Constitution of the

United States. The Court has Jurisdiction under 28 U.S.C. Section 1331 and

1

FILED USDC FLND PN
JUN 8 '22 PM2:52 GM

1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. 2201 and 2202. Plaintiff claims for Injunctive relief authorized by 28 U.S.C. Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedures.

3.) The Northern District of Florida United States Courthouse, 30 W. Government St. Second Floor, Panama City, FL. 32401 is an appropriate venue under 28 U.S.C. section 1391(b)(2) because it is where the events giving rising to these claims occurred.

4.) The Plaintiff filed a notice of claim concerning the occurrences complained of with the comptroller of Florida within 90 days of those occurrences, as required by Florida Law, and the comptroller has failed to settle the plaintiff claims.

## PLAINTIFF

5.) Plaintiff, Derease L. Irons was at all times relevant in this complaint a state prisoner incarcerated by the Florida Department of Corrections (FDOC) at Gulf Correctional Institution, 500 Ike Steele Rd. Wewahitchka, FL. 32465 from November 3rd, 2021 to January 25th 2022.

6.) On January 25th 2022 Plaintiff was transferred to Taylor Correctional Institution Located at 8501 Hampton Springs Rd. Perry, Florida 32348.

## DEFENDANT'S

7.) Defendant, Ricky Dixon, is the secretary of the Florida Department of Corrections located at 501 South Calhoun Street, Tallahassee, FL. 32399. He is

2

sued in his individual and official capacity. In his official capacity, he is legally responsible for the overall operations of (FDOC), including the operations of Florida Department of Corrections facilities, Compliance with the U.S. Constitution and Federal Laws and the promulgation and enforcement of all (FDOC) rules, regulations, policies and practices, including, but not limited to, protecting inmates from Security threat groups, A/K/A Gang Members herein this complaint.

8.) Defendant, A. Crochan, is the (FDOC) Secretary Ricky Dixon Representative. In this capacity, he is legally responsible for reviewing all inmates appeals for protective management to ensure compliance with (FDOC)rules, regulations, compliance with the U.S. Constitution and acts directly on behalf of Secretary Ricky Dixon. His address is 501 South Calhoun Street, Tallahassee, FL 32399.

9.) Defendant, S. Payne is the Warden of Gulf Correctional Institution a (FDOC) facility located at 500 Ike Steele Rd., Wewahitchka FL. 32465. He is legally responsible for the operations of gulf Correctional Institution.

10.) Defendant, Colonel Ricks is the Colonel at Gulf Correctional Institution a (FDOC) Facility located at 500 Ike Steele Rd., Wewahitchka, FL 32465. He is the chief of Security at Gulf C.I. and serves on the ICT Committee that recommends if a inmate should be approved for protective management.

11.) T. Gray is a Defendant, he is the Assistant Warden at Gulf Correctional

3

Institution at (FDOC) Facility located at 500 Ike Steele Rd, Wewahitchka FL. 32465. He is legally responsible for the Security operations at Gulf C.I.

12.) Defendant, Jane Doe is the classification officer who served on Plaintiff Inmate Classification team to recommend or not recommend protective management for plaintiff and as much was legally responsible for plaintiff safety. She can be located at 500 Ike Steele Rd. Wewahitchka FL. 32464.

13). Defendant, Jane Doe is a protective management investigator at Gulf C.I. She is legally responsible for investigating cases dealing with protective management and forwarding the evidence as investigation report to the ICT.

## EXHAUSTION OF LEGAL REMEDIES

14.) Plaintiff has exhausted his administrative remedies to the claims set forth in this complaint and/or the administrative remedies were unavailable.

## PRIOR LITIGATION

15.) Plaintiff has (1) pending 1983 Civil Suit against VCDC County Jail Case No.: 6:20-CV-2328-ORI-GKS-GJK U.S. District Court Middle District of Florida, Orlando Division. Plaintiff does not remember other litigation nor does he have possession of prior litigation due to County Jail Staff sent Plaintiff legal papers home. Plaintiff is Confident that he has not received three strikes to be barred from filing civil suits without full payment as far as the prison ligation Reform Act is concerned.

4

## FACTUAL STATEMENTS

16.) On or about December 8th, 2021, Plaintiff was interviewed by Def. Jane who is a protective management investigator at Gulf C.I.

17.) During the PM Interview Plaintiff informed Def. Jane Doe that Plaintiff had multiple contract hits on his life from several different gang affiliated groups such as the Gangster's, Bloods, Zoes A/K/A fam and Cut Throats, and were authorized by high ranking gang members.

18.) Plaintiff informed Def. Jane that the reason for the hit on his life was because of a recent past incident at Cross City C.I where plaintiff had been imprisoned. Plaintiff explained to the Def. Jane Doe that plaintiff was robbed for three hundred dollars in commissary and threatened by four Gangster Disciples gang members in his cell by knife point while plaintiff was on the toilet in his assigned cell. Plaintiff informed p.m investigator Jane Doe that the four gangster gang inmates threatened plaintiff with homemade prison knifes to traffic drugs, cigarettes and cell phones from lake butler medical center back to Cross City C.I. during plaintiff run for physical therapy at Lake Butler.

19.) Plaintiff informed Def. Jane Doe pm investigator that this was all possible and easily done because Cross City C.I transport staff never patted down or stripped searched inmates returning from medical run, due to it being facility to facility, even though Security staff supposed to search inmates returning from outside

5

transports per policy rules.

20.) Plaintiff informed Def. Jane Doe pm investigator that he went to Cross City C.I staff reported the incident and requested protective custody.

21.) Plaintiff informed Def. Jane Doe pm investigator that Cross City C.I staff rounded up several blood, gangster and cut throat gang members and transferred them to Administration management unit disciplinary Camps and some received negative transfers.

22.) Plaintiff informed pm investigator Jane Doe that some of the inmates who had gotten transferred was high rank gang members, who has the position and authority to have plaintiff stabbed any where that plaintiff is imprisoned at.

23.) Plaintiff informed Def. Jane Doe investigator that the gang member inmates that was rounded up by Cross City staff and transferred believed that plaintiff snitched on their illegal crimes and activities giving the timing of when plaintiff left and the timing when Cross City C.I staff rounded the gang members up and transferred them.

24.) Plaintiff informed the Def. Jane Doe investigator that the effect of the transfers of the gang members inmates were high, because the gang members has to get rid of their cell phones and drugs before they were shipped to (AMU) or to their next camp. That the gang members also lost their hand to hand routes with dirty

6

correction officers who were bringing in contraband from time to time for very few high rank gang members , which in return decreased some high rank gang members profits.

25.) Plaintiff informed Def. Jane Doe that on or about November 23rd 2021 that his roommate inmate Daren Riley had received a order from his Superior, ordering inmate Riley to fight and stab plaintiff. Because plaintiff snitched on their gang and other gangs and has a 1000.00 hit on his life.

26.) Plaintiff informed Def. Jane Doe pm investigator that inmate Riley and he had fought and showed Def. Jane Doe a bite mark bruise located on his right bicep.

27.) Plaintiff informed Def. Jane Doe pm investigator that after the fight between him and inmate Riley that inmate Riley began asking the orderly runaround who was out of his cell for a knife/prison shank. To stab plaintiff so he could carry out the hit on plaintiff.

28.) Plaintiff informed Def. Jane Doe pm individual that several inmates in h-dorm wing one heard inmate Riley and other gang members talking about plaintiff and the incident that happen at Cross City C.I and the hit on his life, as well heard the threats, and Inmate Riley asking for a knife.

29.) Plaintiff informed Def. Jane Doe pm investigated that he had a witness named Matthew Russo who was housed in h-dorm right above plaintiff cell on the tier, h-

7

dorm wing one, and that Matthew Russo was willing to come forward and be a witness to the threats and hits the gang members and inmate Riley was talking about, that Matthew Russo heard everything.

30.) Plaintiff wrote in his written statement and verbally informed Def. Jane Doe pm inv. that inmate Matthew Russo and other inmates in the dorm heard inmate Riley and other gang member inmates tell plaintiff that when he is released from confinement and gets released on the institution compound in general population that "plaintiff would be stabbed up".

31.) During the interview plaintiff showed Def. Jane Doe pm inv. a bite mark on his right arm where inmate Riley had bitten plaintiff in a fight while in confinement at Gulf C.I H dorm wing one, Def. Jane Doe failed to document the bite mark in her report or photograph it or otherwise provide plaintiff with attention to have the bite mark seen and documented by medical for consideration by the ICT.

32.) Def. Jane Doe pm investigator failed to review the camera,s and listen to the audio footage of H-Dorm wing one cameras for Nov 23rd 2022 when requested by plaintiff.

33.) Def. Jane Doe pm Investigator investigation into plaintiff need for protection was nothing more than a perfunctory sham.

8

34.) Def. Jane Doe pm investigator did not interview any inmates who were housed in h-dorm wing one confinement to see if they could substantiate plaintiffs claims.

35.) Def. Jane Doe pm Investigator failed to investigate and review the records of the prior protective management incident that occurred at Cross City C.I to make the connection between the two incidents for her report to ICT, to assist the ICT in its recommendation for protection for plaintiff.

36.) If Def. Jane Doe pm individual had conducted a proper investigation and reviewed the plaintiff pm records from Cross City C.I, Def. Jane Doe would of discovered the connection and found that the four gangster inmates who robbed and threatened plaintiff have a history of joining forces and inmate Riley who fought plaintiff and was trying to stab him was a cut throat gang member also under the 6 point star.

37.) On or about December 15th 2021, plaintiff was seen by (FDOC) ICT. The Inmate classification team A/K/A ICT herein this complaint, has a duty and responsibility per FDOC rules is to interview inmates and available records and make a decision whether the inmate is in need for the inmates protection, The ICT shall make a recommendation to the State classification office to have the inmate transferred to another institution or housed at a protective management camp.

38.) Per FDOC rules and regulations the State class office has five working days to

either approve or disapprove the ICT recommendation.

39.) If the State Classification Office disapproves the ICT recommendation for protection, FDOC rules, regulations and policy allows the inmate to appeal to the secretary of FDOC, who shall deny or approve the State classification office decision and the inmates needs for protection. "The secretary decision denying a inmates appeal for protection is final" and the inmate has no other remedies to receive protection.

40.) If the Secretary representative denies a inmate appeal for protective management, The institution that the inmate is currently located is notified immediately and the institution has the "green light" to release the inmate back on the institution compound into general population.

41.) During the ICT interview of plaintiff, the ICT staff consisted of DEF T. Gray, Ricks and Jane Doe classification officer on or about December 15th 2021 in H-dorm sgt. supervise office.

42.) In the ICT interview plaintiff informed Defendant's, A.W T. Gray, colonel Ricks and Jane Doe classification of detailed reasons for his need for protection.

43.) During the ICT interview plaintiff informed Defendants, A.W T. Gray, Colonel Ricks and Jane Doe classification officer of the same statements plaintiff has already alleged in paragraphs 17 through 36 herein in this complaint.

44.) Plaintiff informed the ICT staff A.W T. Gray, Colonel ricks, Jane Doe classification that the Def. Jane Doe pm inv. failed to interview my witnesses in my written stated, failed to review and listen to audio footage and failed to interview other inmates in H-dorm wing one that would have heard the fights and the threats from gang members.

45.) Plaintiff showed the ICT staff Def, T. Gray Colonel Ricks and Jane Doe the bite mark on his right arm bicep informing them that inmate Riley a cut throat gang member did to plaintiff in the fight, the ICT failed to acknowledge and document the bruise/injury in their report. ICT Def failed to issue separation orders into the system so plaintiff does not ever end up at the same institution with his assailants.

46.) At the conclusion of the hearing the ICT staff consisting of Defendants, T. Gray, Ricks, and Jane Doe classification officer denied plaintiff protective management on the grounds that plaintiff claims were unsubstantiated.

47.) The ICT staff Defendants, Assistant warden T. Gray, Ricks and Jane Doe Denied plaintiff protective management alleging plaintiff claims were unsubstantiated with full knowledge from plaintiff that Def. Jane Doe pm investigator failed to retrieve and secure and forward them evidence that could and would substantiate plaintiff claim.

48.) The ICT staff Def. A.W T. Gray, Colonel Ricks and Jane Doe classification

refused to post-pone the ICT meeting and order the pm inv to do a proper investigation and retrieve available evidence that would have substantiated plaintiff claims.

49.) The ICT staff Def. A.W T. Gray, colonel Ricks and Jane Doe classification all acted with malicious intent towards plaintiff and the ICT interview was a perfunctory sham.

50.) Defendant's, T. Gray, Ricks and John Doe classification officer had no reasons to disbelieve plaintiff statements.

51.) By information and belief Gulf C.I. in Florida D.O.C. has a unwritten policy, custom and wide spread practice of conducting ICT interviews in a perfunctory sham manner and arbitrarily denying inmates protective management unless they have a physical injury.

52.) On or about December 22nd 2021, plaintiff, appealed the ICT and state classification office denial for protective management. To the secretary Ricky Dixon Representative Def. A. Crochan.

53.) In plaintiff appeal to the secretary Representative A. Crochan plaintiff asserted in his appeal the same statements asserted in paragraph 17 through 51 herein this complaint.

54.) Plaintiff clearly informed Def. A. Crochan of the many flaws in the protective

12

management investigation and the ICT interview and how the investigator and ICT staff suppressed the evidence to substantiate the claims and took no action to retrieve and preserve available witnesses and evidence.

55.) Def. A. Crochan took no action and denied plaintiff appeal with full knowledge that the pm investigation and ICT was flawed from the start and did nothing to correct or remedy the errors.

56.) Def. A. Crochan responded to plaintiff appeal stating "the institution decision is upheld and alleging that their is security measures in place without elaborating.

57.) If Def. Crochan would have properly reviewed the pm records associated with plaintiff request for protective management, Def. A. Crochan would have seen plaintiff written statement.

58.) Def. A. Crochan would have also seen that the ICT was in possession of the names of plaintiff witnesses that could corroborate his claims and found out that the ICT nor Investigator Interviewed Plaintiff Witnesses which would of made the ICT decision that Plaintiff claims could not be substantiated a error on ICT.

59.) Def. A. Crochan Secretary Representative was nothing more than a perfunctory sham.

60.) By Information and belief Def. A. Crochan and/or FDOC Secretary representatives has a widespread custom, practice of responding to inmate appeals

13

with pre drafted responses, similar to a copy and paste and sign method, and arbitrarily denies Protective Management appeals without a meaningful review.

61.) On January 3rd 2022 Gulf Correctional Institution received Def. A. Crochan (FDOC) Secretary Representative response denying plaintiff appeal for protective management, Consequently plaintiff was released from Confinement and returned to general population and housed in F-dorm wing two Rm. 109.

62.) As a direct result of Defendants A. Crochan and all defendants described herein deliberate indifference to plaintiff safety on January 6th 2022 Plaintiff was stabbed leaving Gulf C.I. dining hall walking back to F-dorm while in a single file line.

63.) The line was walking to F-dorm in a single file line and turned the corner, still in the single file line with other inmates, approaching D-dorm plaintiff was stabbed in the back of the head multiple times with a homemade prison knife by a known Blood gang member Inmate named Jeremy Taylor.

64.) Plaintiff had Blood leaking from his head, the blood was so bad it destroyed Plaintiff State Issued prison blues and personal shoes and personal white T. Shirt and covered Gulf C.I, concrete in various spots leading all the way to medical about 200 yards.

65.) At medical plaintiff received about 8 or 9 clear stitch strips to stop the bleeding and also had to receive a tetanus shot to prevent having lockjaw and other

14

health problems associated with being stabbed with Rusted Metal Knives.

66.) Plaintiff also has severe Post Traumatic Stress Disorder from the stabbing and has nightmares frequently and is unable to properly function in the general population and enjoy the limited freedom and services that FDOC provides.

67.) Plaintiff has a higher rate of not properly functioning in the general population where their are enormous amounts of gang presence and plaintiff is forced by FDOC to be housed around. Whereby continually degrading his mental state FDOC staff has denied Plaintiff meaningful mental health treatment and has refused to conduct an examination to diagnose Plaintiff so that Plaintiff can seek reasonable accommodations, for safe housing under the Americans with Disability's Act.

68.) Defendant S. Payne has received numerous Gulf C.I. use of force reports, inmate stabbings incidents reports and oral and formal inmate grievances about inmate physical assaults happening outside on the institutions compound, giving Defendant S. Payne knowledge that the absence of video surveillance outside posed a substantial risk of serious harm.

69.) Defendant, S. Payne knew that video surveillance was often the only way a inmate assailant could be identified and held accountable or the only way a inmate claims of being beaten by staff or inmates outside could be substantiated.

70.) Defendant, S. Payne intentionally had a unwritten policy and practice to have

15

absolutely no camera's in the large portion of the Institution Compound in order to almost always side with his staff and find a inmate claim of being assaulted by staff unsubstantiated, this unwritten Policy was the moving force of plaintiff's constitutional rights.

71.) Defendant, S. Payne knew that their was a substantial risk to plaintiff that he would be harmed and that inmate assaults are often executed off camera, Defendant S. Payne unwritten policy described in the preceding paragraph number (70) herein aided and encouraged plaintiff assailant Jeremy Taylor to carry out his assassination attempt on plaintiff life.

72.) Defendant, S. Payne intentional did not perform or order any meaningful actions to be taken to confirm/substantiate plaintiff claims when plaintiff approached Def. Payne on or about Jan. 3rd, 2022.

73.) On or about January 3rd, 2022 plaintiff seen Warden S. Payne in the cafeteria, plaintiff informed the warden that his life was at risk by prison gangs due to the gangs perceived plaintiff as being a snitch and ordered a hit on plaintiff life and further informed Def. S. Payne of the protective management ind. flaws in her investigation and about the improper review by the ICT, Def. S. Payne responded to plaintiff stating "Welcome to Gulf C.I. and I advised you get you a knife." and the Warden S. Payne walked off.

74.)(FDOC) Secretary Ricky Dixon is personally aware of the widespread physical

assaults and stabbings occurring in general population state wide in Florida Prisons often by gang affiliated inmates.

75.)(FDOC) Secretary Ricky Dixon has refused to separate unaffiliated inmates from gang affiliated inmates despite FDOC knowledge of the substantial risk of harm that gang affiliated inmates pose against a non affiliated inmate.

76.) FDOC Secretary Ricky Dixon knows that the gang affiliated inmates has been and is currently active and participating in widespread crimes of violence, extortion, physical assaults and stabbings, smuggling drugs etc throughout the State of Florida, with some endings in inmates death from drug overdoses to death from inmate stabbings, yet FDOC still house unaffiliated inmates with affiliated gang inmates!!!

77.)(FDOC) Secretary Ricky Dixon has gang affiliated inmates categorized as "Security Threat Groups" and is fully aware of these activities these security threat groups are involved in, including but not limited to, inmate on inmate physical assaults and stabbings, extortion, smuggling contraband and selling drugs.

78.) Despite (FDOC) Ricky Dixon's knowledge of the substantial Risk and harm gang affiliated inmates poses on unaffiliated inmates safety, FDOC continues to force unaffiliated inmates to be housed with gang affiliated inmates knowing the substantial risk of harm to a inmates safety.

79.) Unaffiliated inmates who are not in gangs are often bullied, extorted,

17

physically assaulted etc, by these affiliated gang members who moves in packs, unaffiliated inmates are almost always required to defend for their own safety. (FDOC) and Secretary Ricky Dixon is fully aware of this.

80.) The only time FDOC will remove and separate a affiliated gang member from a unaffiliated inmate in general population is when the affiliated gang member is to have been found guilty of major institution rule violation that qualifies him to be sent to (FDOC) Administrative management unit A/K/A (AMU) or close management unit A/K/A (CM).

81.) Even where FDOC sends these dangerous affiliated gang members to (AMU) or (CM) institution that is needed to separate unaffiliated inmates from these gang members; the shortage of staff to run and operate solitary confinement institutions forces FDOC to fast track dangerous gang affiliated inmates release to obtain his bed space for another dangerous gang affiliated inmate. Whereby making (AMU) or (CM) institutions meaningless to deter those dangerous gang affiliated illegal crimes and activities.

82.) FDOC shortage of staff doesn't allow FDOC to open or have more (AMU) or (CM)

83.) FDOC shortage of staff has been a ongoing problem for a number of years and contributed to aiding of the January 6th 2022 assassination attempt on plaintiff life

when plaintiff was stabbed in the head multiple times by a known blood gang member Jeremy Taylor.

84.) The evening of January 6th 2022 plaintiff was stabbed only(1) FDOC staff was outside in the yard supervising the inmates movements, indeed no FDOC staff member seen plaintiff assailant maneuver himself out of H-dorm line and move across the compound sneak into F-dorm line and quickly skip the inmates in line to viciously stab plaintiff in the head multiple times.

85.) In Addition to paragraph (80) herein, By the (FDOC) only separating gang affiliated inmates when gang affiliated inmates are found to have violated a Major institutional rule; This policy, practice allows and encourages gang affiliated to continue their illegal crimes and activities off camera with the goal to make sure that their is no evidence of weight available for FDOC staff, such policy ensures gang members goals and practice to commit physical assaults and stabbings on other inmates in areas where their are no cameras in place.

86.) With the lack of camera's to have video surveillance and inmates fear of retaliation by the gang members if they were to provide a statement and cooperate with (FDOC) staff, this allows the gang affiliated inmates who ordered and/or who committed the stabbing to evade punishment altogether or to be placed in administrative confinement for investigation where inmates always claims he

didn't do it and it was pure mistaken identity, (FDOC) and all defendants know this. Yet defendants still have these gang affiliated inmates housed with unaffiliated inmates and Gulf institution where plaintiff was imprisoned at, didn't have any cameras outside in the prison yard on the compound in the area where inmates are frequently at and walks to and from the dining hall and other call-outs.

87.) FDOC and defendants, Ricky Dixon, S. Payne, T. Gray, Colonel Ricks knows of the substantial risk to plaintiff and other inmates safety that no camera's/video surveillance has on plaintiff and other inmates safety but failed implement policies and procedures and practices to have cameras and video surveillance in place in the prison yard inside grounds despite knowing the apparent need to do so in order to provide for a inmates safety.

88.) Defendant, S.Payne and (FDOC) Secretary Ricky Dixon are both aware of the Statewide practice of operating prisons in Florida with a shortage of staff and is aware of the danger to inmates and staff safety when their is insufficient staff to monitor inmates movements on the institution compound, yet defendants has not taken any "meaningful action" such as releasing non-violent inmates and/or combining/shutting prisons down to bring Corrections Officers to other areas to reduce the danger on inmates going and returning from the institutions dormitory's.

89.) FDOC continues to operate Florida prisons knowing their is a lack of staff and

the substantial risk it poses on a inmates safety.

90.) By information and belief plaintiff assailant fully planned the January 6th, 2022 assasination attempt on plaintiff life and was fully aware that their would be no staff on that side of the institution compound where plaintiff was attacked.

91.) By information and belief Def. S. Payne and Def. T. Gray, A. Crochan, Colonel Ricks and all other defendants described herein failed to follow (FDOC) rules, regulations governing protective management when reviewing plaintiff need for protection.

## CLAIMS FOR RELIEF

## COUNT I

## A. FAILURE TO PROTECT

92.) Plaintiff reasserts and incorporates herein by reference all averments set forth in all paragraphs 1-91 preceding the claims for relief section, above.

93.) The action and/or omissions, policies, practices, customs, lack of policies, unwritten policies and practices violated plaintiff Eight Amendment right under the U.S. Constitution to be free from deliberate indifference to his safety.

94.) The failure of Defendant Jane Doe PM Investigator to interview plaintiff requested witnesses and/or to interview any other witnesses and failure to retrieve and preserve other available evidence that was needed to substantiate plaintiff claims for protection violated his Eight Amendment right to be free from deliberate

21

indifference to his safety.

95.) As a result of all defendant's actions and/or omissions by itself and/or in the cumulative effect of FDOC policies, unwritten policies practices plaintiff was brutally and viciously stabbed from behind in the back of his head multiple times and received serious physical and emotional injuries.

## COUNTS II

### Negligent Failure to Protect

96.) Defendants, Ricky Dixon, A. Crochan, S. Payne, T. Gray, Colonel Ricks, Jane Doe classifications OFC and Jane Doe protective management Inv. owed plaintiff a duty of reasonable care to protect him from assaults, assaults by other prisoners.

97.) Defendant's breach of duty resulted in serious physical and emotional injury and damages.

98.) The breach of duty proximately caused those damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff request that this Court grant the following relief:

99.) A. Declare that Defendant's A. Crochan, S. Payne, T. Gray, Ricks, Jane Doe violated Plaintiff Eighth Amendment rights when they failed to protect him from a known Risk of physical harm.

100.) B. Issue an Injunction requiring that Defendants Separate Plaintiff from gang affiliated Inmates and to protect Plaintiff from physical assaults by inmates.

101.) C. Award Compensatory Damages and punitive damages for plaintiffs physical and emotional Injuries against each defendant.

102.) D. Jury Trial on all triable issues.

103.) E. Grant Plaintiff such other relief as it may appear plaintiff is entitled to.

104.) F. Issue on preliminary injunction and temporary restraining order requiring Defendant's to separate plaintiff from gang members and to house him at a protective management institution.

## OATH

I DECLARE UNDER PENALTIES OF PERJURY, that the information in this document is true and correct and that any facts stated on information and belief are true to the best of my knowledge and belief.

/s/ _Derease L. Irons_
Derease L. Irons DC# V35327

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of all documents was hand delivered to prison officials for delivery via U.S. Postal Service to to the Defendant's at 501 South Calhoun St., Tallahassee, Florida 32399; Att: General Counsel's Office this 18th day of March 2022.

/s/ _Derease L. Irons_
Derease L. Irons DC# V35327
Liberty C.I.
11064 N.W. Dempsey Barron Rd.
Bristol, Florida 32321

23









Dereise L. Irons
DC#V35327
Liberty Correctional Institution
11064 N.W. Dempsey Barron Rd
Bristol FL 32321

United States District Court
Northern Florida
Clerk of Court
100 N. Palafox St
Pensacola FL 32502-5665

Legal and/or Privileged Mail
Mailed From
Liberty Correctional Institution

CHECKED JUN 0 8 2022

LEGAL