# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PANAMA DIVISION

PROVIDED BY
LIBERTY CI

SEP 1 2 2022

FOR MAILING_____

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE PRISONER LITIGANTS IN ACTIONS UNDER
## 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

**DEREASE L. IRONS,**
**Inmate ID Number: V35327,**
  Petitioner,

v.

**RICKY DIXON,**
  Defendant.*et al*
_____/

Case No.: 5:22-CV-113-TKW/MJF

Jury Trial Requested?
[x] Yes  [ ] No

## 1st Amended Complaint

# I. PARTIES TO THIS COMPLAINT

A.   Plaintiff

Plaintiff's Name: <u>Derease L. Irons</u> ID Number: <u>V35327</u>

List all other names by which you have been known: N/A

Current Institution: <u>Liberty Correctional Institution</u>

Address: <u>11064 N.W. Dempsey Barron Rd., Bristol, Florida 32321</u>

B.   Defendant(s)
State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for **each and every** Defendant:

1. **Defendant's Name:** <u>Ricky Dixon</u>

**Official Position:** <u>He is sued in his individual and official capacity. In his official capacity, he is legally responsible for the overall operations of (FDOC), including the operations of Florida Department of Corrections facilities. Compliance with the U.S. Constitution and Federal Laws and the promulgation and enforcement of all (FDOC) rules, regulations, policies and practices, including, but not limited to, protecting inmates from security threat groups, A/K/A Gang Members herein this complaint.</u>

**Employed at:** <u>Florida Department of Corrections</u>

**Mailing Address:** <u>501 South Calhoun Street, Tallahassee, Florida 32399.</u>

[X] Sued in Individual Capacity      [X] Sued in Official Capacity

**2. Defendant's Name:** <u>A. Cochran</u>

**Official Position:** <u>In this capacity, he is legally responsible for reviewing all inmates appeals for protective management to ensure compliance with (FDOC) rules, regulations, compliance with the U.S. Constitution and acts directly on behalf of secretary Ricky Dixon.</u>

**Employed at:** <u>Florida Department of Corrections</u>

**Mailing Address:** <u>501 South Calhoun Street, Tallahassee, Florida 32399.</u>

[X] Sued in Individual Capacity      [X] Sued in Official Capacity

**3. Defendant's Name:** <u>S. Payne</u>

**Official Position:** <u>Defendant, S. Payne is the Warden of Gulf Correctional Institution a (FDOC) facility located at 500 Ike Steele Rd., Wewahitchka, Florida 32465. He is legally responsible for the operations of Gulf Correctional Institution.</u>

**Employed at:** <u>Florida Department of Corrections</u>

**Mailing Address:** <u>501 South Calhoun Street, Tallahassee, Florida 32399.</u>

[X] Sued in Individual Capacity      [X] Sued in Official Capacity

**4. Defendant's Name:** <u>Colonel Ricks</u>

**Official Position:** <u>Defendant, Colonel Ricks is the Colonel at Gulf Correctional Institution a (FDOC) Facility located at 500 Ike Steele Rd., Wewahitchka, Florida</u>

32465. He is the chief of Security at Gulf C.I. and serves on the ICT Committee that recommends if a inmate should be approved for protective management.

**Employed at:** Florida Department of Corrections

**Mailing Address:** 501 South Calhoun Street, Tallahassee, Florida 32399.

[X] Sued in Individual Capacity          [X] Sued in Official Capacity

5. **Defendant's Name:** T. Gray

**Official Position:** He is the Assistant Warden at Gulf Correctional Institution a (FDOC).

**Employed at:** Florida Department of Corrections

**Mailing Address:** 501 South Calhoun Street, Tallahassee, Florida 32399.

[X] Sued in Individual Capacity          [X] Sued in Official Capacity

6. **Defendant's Name:** Jane Doe

**Official Position:** Is the classification officer who served on Plaintiff Inmate Classification team to recommend or not recommend protective management for plaintiff and as much was legally responsible for plaintiff's safety. She can be located at 500 Ike Steele Rd., Wewahitchka, Florida 32464.

**Employed at:** Florida Department of Corrections

**Mailing Address:** 501 South Calhoun Street, Tallahassee, Florida 32399.

[X] Sued in Individual Capacity          [X] Sued in Official Capacity

4

7. **Defendant's Name:** <u>Jane Doe</u>

**Official Position:** <u>Is a protective management investigator at Gulf C.I. She is legally responsible for investigating cases dealing with protective management and forwarding the evidence as investigation report to the ICT.</u>

**Employed at:** <u>Florida Department of Corrections</u>

**Mailing Address:** <u>501 South Calhoun Street, Tallahassee, Florida 32399.</u>

[X] Sued in Individual Capacity          [X] Sued in Official Capacity

*All Defendants being sued in their official capacity is for the sole purpose for plaintiff to obtain injunctive relief with the exception of Plaintiff's A.D.A. Claim.*

## <u>EXHAUSTION OF LEGAL REMEDIES</u>

Plaintiff has exhausted his administrative remedies to the claims set forth in this complaint and/or the administrative remedies were unavailable.

## <u>PRIOR LITIGATION</u>

Plaintiff has (1) pending 1983 Civil Suit against VCDC County Jail Case No.: 6:20-CV-2328-ORI-GKS-GJK U.S. District Court Middle District of Florida, Orlando Division. Plaintiff does not remember other litigation nor does he have possession of prior litigation due to County Jail Staff sent Plaintiff legal papers home. Plaintiff is Confident that he has not received three strikes to be barred from filing civil suits without full payment as far as the prison litigation Reform Act is concerned.

**II.    BASIS FOR JURISDICTION UNDER 28 U.S.C. § 1331 or § 1346**

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

**III.    PRISONER STATUS**

Indicate your confined status:

[ ] Pretrial Detainee            [ ] Civilly Committed Detainee

[X] Convicted State Prisoner    [ ] Convicted Federal Prisoner

[ ] Immigration Detainee        [ ] Other *(explain below):*

**IV.    STATEMENT OF FACTS**

Provide a short and plain statement of the *facts* showing why you are entitled to relief. Describe how *each* Defendant was involved and what each Defendant did, or did not do, in support of your claim. Identify when and where the events took place, and state how each Defendant caused you harm or violated federal law. Write each statement in short, numbered paragraphs, limited as far as practicable to a single event or incident. *Do not make legal arguments, quote cases, cite statutes, or reference a memorandum.*

You may make copies of page 6 if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. Exhibits attached to the complaint will count as part of you page limitation. Therefore, do not attach irrelevant or unnecessary exhibits. Facts not related to this same incident or issue must be addressed in a separate civil rights complaint.

1.)     On or about December 8th, 2021, Plaintiff was interviewed by Def. Jane Doe who is a protective management investigator at Gulf C.I.

2.)     During the PM Interview Plaintiff informed Def. Jane Doe that Plaintiff had multiple contract hits on his life from several different gang affiliated groups such as the Gangster's, Bloods, Zoes A/K/A Fam and Cut Throats, and were authorized by high ranking gang members.

3.)     Plaintiff informed Def. Jane Doe that the reason for the hit on his life was because of a recent past incident at Cross City C.I. where Plaintiff had been imprisoned. Plaintiff explained to the Def. Jane Doe that Plaintiff was robbed for three hundred dollars in commissary and threatened by four Gangster Disciples gang members in his cell by knife point while plaintiff was on the toilet in his assigned cell. Plaintiff informed PM investigator Jane Doe that the four Gangster Gang inmates threatened Plaintiff with homemade prison knives to traffic drugs, cigarettes and cell phones from Lake Butler Medical Center back to Cross City C.I.

7

during Plaintiff's run for physical therapy at Lake Butler.

4.)   Plaintiff informed Def. Jane Doe PM Investigator that this was all possible and easily done because Cross City C.I. transport staff never patted down or stripped searched inmates returning from a medical run, due to it being facility to facility, even though Security Staff were supposed to search inmates returning from outside transports per policy rules.

5.)   Plaintiff informed Def. Jane Doe PM investigator that he went to Cross City C.I. staff reported the incident and requested protective custody.

6.)   Plaintiff informed Def. Jane Doe PM Investigator that Cross City C.I. staff rounded up several Blood, Gangster and Cut Throat gang members and transferred them to Administration Management unit disciplinary camps and some received negative transfers.

7.)   Plaintiff informed PM investigator Jane Doe that some of the inmates who had gotten transferred were high rank gang members, who have the position and authority to have Plaintiff stabbed any where that Plaintiff is imprisoned at.

8.)   Plaintiff informed Def. Jane Doe investigator that the gang member inmates that were rounded up by Cross City staff and transferred believed that Plaintiff snitched on their illegal crimes and activities giving the timing of when Plaintiff left and the timing when Cross City C.I. staff rounded the gang members up and transferred them.

9.)   Plaintiff informed the Def. Jane Doe investigator that the effect of the transfers of the gang members inmates were high, because the gang members had to get rid of their cell phones and drugs before they were shipped to (AMU) or to their next camp. That the gang members also lost their hand to hand routes with dirty correction officers who were bringing in contraband from time to time for very few high rank gang member, which in return decreased some high rank gang members profits.

10.)   Plaintiff informed Def. Jane Doe that on or about November 23rd, 2021 that his roommate inmate Daren Riley had received a order from his superior, ordering inmate Riley to fight and stab plaintiff. Because plaintiff snitched on their gang and other gangs and has a 1000.00 hit on his life.

11.)   Plaintiff informed Def. Jane Doe pm investigator that inmate Riley and him had fought and showed Def. Jane Doe a bite mark bruise located on his right bicep.

12.)   Plaintiff informed Def. Jane Doe PM Investigator that after the fight between him and inmate Riley that inmate Riley began asking the orderly runaround who was out of his cell for a knife/prison shank. To stab Plaintiff so he could carry out the hit on Plaintiff.

13.)   Plaintiff informed Def. Jane Doe PM Investigator that several inmates in h-dorm wing one heard inmate Riley and other gang members talking about Plaintiff and the incident that happened at Cross City C.I. and the hit on his life, as well

9

heard the threats, and Inmate Riley asking for a knife.

14.)   Plaintiff informed Def. Jane Doe PM Investigator that he had a witness named Matthew Russo who was housed in H-dorm right above plaintiff's cell on the tier, H-dorm wing one, and that Matthew Russo was willing to come forward and be a witness to the threats and hits the gang members and inmate Riley was talking about, that Matthew Russo heard everything.

15.)   Plaintiff wrote in his written statement and verbally informed Def. Jane Doe PM Investigator that inmate Matthew Russo and other inmates in the dorm heard inmate Riley and other gang member inmates tell plaintiff that when he is released from confinement and gets released on the institution compound in general population that "plaintiff would be stabbed up".

16.)   During the interview plaintiff showed Def. Jane Doe PM Investigator a bite mark on his right arm where inmate Riley had bitten plaintiff in a fight while in confinement at Gulf C.I. H-dorm wing one, Def. Jane Doe failed to document the bite mark in her report or photograph it or otherwise provide plaintiff with attention to have the bite mark seen and documented by medical for consideration by the ICT.

17.)   Def. Jane Doe PM investigator failed to review the camera's and listen to the audio footage of H-Dorm wing one cameras for Nov. 23rd, 2022 when requested by plaintiff.

10

18.) Def. Jane Doe PM Investigator's investigation into plaintiff need for protection was nothing more than a perfunctory sham.

19.) Def. Jane Doe PM Investigator did not interview any inmates who were housed in H-dorm wing one confinement to see if they could substantiate plaintiffs claims.

20.) Def. Jane Doe PM Investigator failed to investigate and review the records of the prior protective management incident that occurred at Cross City C.I. to make the connection between the two incidents for her report to ICT, to assist the ICT in it's recommendation for protection for plaintiff.

21.) On or about December 15th, 2021, plaintiff was seen by (FDOC) ICT. The inmate classification team A/K/A ICT herein this complaint, the ICT has a duty and responsibility per FDOC rules is to interview inmates and available records and make a decision whether the inmate is in need for protection, the ICT shall make a recommendation to the State classification office to have the inmate transferred to another institution or housed at a protective management camp.

22.) Per FDOC rules and regulations the State Class Office has five working days to either approve or disapprove the ICT recommendation.

23.) If the state classification office disapproves the ICT recommendation for protection, FDOC rules, regulations and policy allows the inmate to appeal to the secretary of FDOC, who shall deny or approve the state classification office

11

decision and the inmates needs for protection. "The secretary decision denying a inmates appeal for protection is final" and the inmate has no other remedies to receive protection.

24.)  If the secretary representation denies a inmate appeal for protective management, the institution that the inmate is currently located at is notified immediately and the institution has the "green light" to release the inmate back on the institution compound into general population.

25.)  During the ICT interview of plaintiff, the ICT staff consisted of Def. T. Gray, Ricks and Jane Doe classification officer which took place on or about December 15th, 2021 in H-dorm Sgt. Supervised Office.

26.)  In the ICT interview plaintiff informed Defendant's, A.W. T. Gray, Colonel Ricks, and Jane Doe classification of detailed reasons for his need for protection.

27.)  During the ICT interview plaintiff informed Defendants, A.W T. Gray, Colonel Ricks and Jane Doe classification officer of the same statements Plaintiff has already alleged in paragraphs 2 through 20 herein in this complaint.

28.)  Plaintiff informed the ICT staff A.W T. Gray, Colonel Ricks, Jane Doe classification that the Def. Jane Doe PM Investigator failed to interview plaintiff witnesses in his written statements, failed to review and listen to audio footage and failed to interview other inmates in H-dorm wing one that would have heard the fights and the threats from gang members.

29.) Plaintiff showed the ICT staff Def. T. Gray Colonel Ricks and Jane Doe the bite mark on his right arm bicep informing them that inmate Riley a cut throat gang member did to plaintiff in the fight, the ICT failed to acknowledge and document the bruise/injury in their report. ICT Defendants failed to issue separation orders into the system so plaintiff does not ever end up at the same institution with his assailants.

30.) At the conclusion of the hearing the ICT staff consisting of Defendants, T. Gray, Ricks and Jane Doe denied and concealed plaintiff's need for protective management alleging plaintiff claims were unsubstantiated with full knowledge from plaintiff that Def. Jane Doe PM investigator failed to retrieve and secure and forward them evidence that could and would substantiate plaintiff's claim.

31.) The ICT staff Def. A.W T. Gray, Colonel Ricks and Jane Doe classification refused to keep plaintiff in protective management and postpone the ICT meeting and order the PM Investigator to do a proper investigation and retrieve available evidence that would have substantiated plaintiff's claims.

32.) The ICT staff Def. A.W T. Gray, Colonel Ricks and Jane Doe classification all acted with malicious intent towards plaintiff and the ICT interview was a perfunctory sham.

33.) Defendant's, T. Gray, Ricks and Jane Doe classification officer had no reasons to disbelieve plaintiff statements.

34.) By information and belief Gulf C.I. and Florida D.O.C. has a unwritten policy, custom and wide spread practice of conducting ICT interviews in a perfunctory sham manner and arbitrarily denies inmates protective management.

35.) On or about December 22nd, 2021, plaintiff, appealed the ICT and state classification office denial for protective management to the Secretary Ricky Dixon Representative Def. A. Cochran.

36.) In plaintiff's appeal to the secretary Representative A. Cochran plaintiff asserted in his appeal the same statements asserted in paragraph 2 through 34 herein this complaint.

37.) Plaintiff clearly informed Def. A. Cochran of the many flaws and procedural errors in the protective management investigation and the ICT interview and how the investigator and ICT staff suppressed the evidence that would have substantiated Plaintiff's claims and took no action to retrieve and preserve available witnesses and evidence.

38.) Def. A. Cochran did not investigate Plaintiff's grievance/appeal nor did he take any other meaningful corrective action to correct the constitutional violations that Plaintiff apprised him and instead denied plaintiff's appeal with full knowledge that the PM Investigation and ICT was flawed from the start.

39.) By Information and belief Def. A. Cochran has been designated as secretary representative by Defendant Ricky Dixon to investigate inmate grievances and

14

appeals to insure the inmates U.S.C. and state rights are not being violated and to ensure that FDOC rules and regulations are being followed.

By information and belief Def. A. Cochran did not follow FDOC rules and regulations, policies and prosedures when reviewing Plaintiff appeals for protection and instead Def. A. Cochran intentionally turned a blind eye of constitutional violations that plaintiff apprised him of that were occurring at Gulf C.I. by Defendants.

Def. A. Cochran had the ability, duty, and authority to investigate Plaintiff's need for protection and enforce Gulf C.I. ICT team to conduct an investigation and interview Plaintiff request of witnesses.

Defendant A. Cochran reviewed a Plaintiff grievance/appeal was nothing more than a perfunctory sham review.

40.) Def. A. Cochran responded to plaintiff appeal stating "the institution decision is upheld and alleging that their is security measures in place without elaborating.

41.) If Def. Cochran would have properly reviewed the PM records associated with plaintiff's request for protective management, Def. A. Cochran would have seen plaintiff's written statement.

42.) Def. A. Cochran would have also seen that the ICT was in possession of the names of plaintiff witnesses that could corroborate his claims and found out that

15

the ICT nor Investigator Interviewed Plaintiff Witnesses which would of made the ICT decision that Plaintiff's claims could not be substantiated a error on ICT.

43.) Def. A. Cochran Secretary Representative performance was nothing more than a perfunctory sham.

44.) By Information and belief Def. A. Cochran and/or FDOC Secretary representative has a widespread custom, practice of responding to inmate appeals with predrafted responses, similar to a copy and paste and sign method, and arbitrarily denies Protective Management appeals without a meaningful review.

45.) On January 3rd, 2022 Gulf Correctional Institution received Def. A. Cochran (FDOC) Secretary Representative response denying plaintiff's appeal for protective management, consequently plaintiff was released from confinement and returned to general population and housed in F-dorm wing two Rm. 109.

46.) As a direct result of Defendant's A. Cochran and all defendant's described herein collective deliberate indifference to plaintiff's safety on January 6th, 2022 and preceding January 6 plaintiff was stabbed leaving Gulf C.I. dining hall walking back to F-dorm while in a single file line.

47.) The line was walking to F-dorm in a single file line and turned the corner, still in a single file line with other inmates, approaching D-dorm plaintiff was stabbed in the back of the head multiple times with a homemade prison knife by a known Blood gang member inmate named Jeremy Taylor.

48.)   Plaintiff had Blood leaking from his head, the blood was so bad it destroyed Plaintiff's State issued prison blues and personal shoes and personal white T. Shirt and covered Gulf C.I., concrete in various spots leading all the way to medical about 200 yards.

49.)   At medical plaintiff received about 8 or 9 clear stitch strips to stop the bleeding and also had to receive a Tetanus shot to prevent having lockjaw and other health problems associated with being stabbed with rusted metal knives.

50.)   Plaintiff has been diagnosed with Post Traumatic Stress Disorder and receives therapy from the stabbing and has nightmares frequently and is unable to properly function in the general population and enjoy the limited freedom and services that FDOC provides.

51.)   Plaintiff has a higher rate of not properly functioning in the general population where their are enormous amounts of gang presence and plaintiff is forced by FDOC to be housed around the violent gang, whereby continually degrading his mental health.

52.)   Defendant S. Payne has received numerous Gulf C.I. use of force reports, inmate stabbing incidents reports and hundreds of oral and formal written inmate grievances about inmate physical assaults happening outside on the institutions compound, Defendant S. Payne had knowledge that the absence of video surveillance outside posed a substantial risk of serious harm prior to January 6,

17

2022 attack on Plaintiff.

53.)     Defendant, S. Payne knew that video surveillance was often the only way a inmate assailant could be identified and held accountable or the only way a inmate claims of being beaten by staff or inmates outside could be substantiated.

54.)     Defendant, S. Payne intentionally had a unwritten policy and practice to have absolutely no camera's in the large portion of the institution compound in order to almost always side with his staff and find a inmate's claim of being assaulted by staff unsubstantiated, this unwritten policy was the moving force of plaintiff's constitutional rights.

55.)     Defendant, S. Payne knew that there was a substantial risk to plaintiff that he would be harmed and that inmate assaults are often executed off camera through reports, inmate grievances and prior work history experience, Defendant S. Payne unwritten policy described in the preceding paragraph number (54) aided and encouraged Plaintiff assailant Jeremy Taylor   to carry out his assassination attempt on plaintiff's life outside on the institution compound on January 6th, 2022.

56.)     Defendant, S. Payne intentionally did not perform or order any meaningful actions to be taken to confirm/substantiate plaintiff's claims when plaintiff approached Def. Payne on or about Jan. 3rd, 2022.

57.)     On or about January 3rd, 2022 plaintiff's seen Warden S. Payne in the cafeteria, plaintiff informed the warden that his life was at risk by prison gangs due

18

to the gangs perceiving plaintiff as being a snitch and ordered a hit on plaintiff's life and further informed Def. S. Payne of the protective management individual flaws in her investigation and about the improper review by the ICT, Def. S. Payne responded to plaintiff stating "Welcome to Gulf C.I., *We will hit cha Florida* and I advise you get you a knife." and  Warden S. Payne walked off.

58.)  (FDOC) Secretary Ricky Dixon is personally aware of the widespread physical assaults and stabbings occurring in general population state wide in Florida Prisons often by gang affiliated inmates.

59.)  (FDOC) Secretary Ricky Dixon knows that the gang affiliated inmates has been and is currently active and participating in widespread longstanding history of crimes of violence, extortion, physical assaults and stabbings, smuggling drugs etc. throughout the State of Florida, with some endings in inmates death from drug overdoses to death from inmate stabbings, yet FDOC still house unaffiliated inmates with affiliated gang inmates!!!

60.)  Despite (FDOC) Ricky Dixon's knowledge of the substantial risk and harm gang affiliated inmates poses on unaffiliated inmates safety, FDOC continues to force unaffiliated inmates to be housed with gang affiliated inmates knowing the substantial risk of harm to an inmates safety.

61.)  Unaffiliated inmates who are not in gangs are often bullied, extorted, physically assaulted etc. by these affiliated gang members who move in packs,

unaffiliated inmates are almost always required to defend for their own safety. (FDOC) and Secretary Ricky Dixon and Defendant S. Payne is fully aware of this through oral/written complaints to them or administrators, daily reports, inmate grievances and staff complaints.

62.) The only time FDOC will remove and separate a affiliated gang member from an unaffiliated inmate in general population is when the affiliated gang member is found guilty of major institution rule violation that qualifies him to be sent to (FDOC) Administrative management unit A/K/A (AMU) or close management unit A/K/A (CM) and still this FDOC policies/practice is rarely enforced.

63.) Even where FDOC sends these dangerous affiliated gang members to (AMU) or (CM) institution that is needed to separate unaffiliated inmates from these gang members; the shortage of staff to run and operate solitary confinement institutions forces FDOC to fast track dangerous gang affiliated inmates release from (CM) or (AMU) to obtain his bed space for another dangerous gang affiliated inmate. Whereby making (AMU) or (CM) institutions meaningless to deter those dangerous gang affiliated inmates illegal crimes and activities and consequently continue to house these violent gang members with inmates who are not in gangs.

64.) FDOC shortage of staff doesn't allow FDOC to open or have more (AMU) or (CM) housing units.

20

65.) FDOC shortage of staff has been an ongoing problem for a number of years and contributed to aiding of the January 6th, 2022 assassination attempt on plaintiff's life when plaintiff was stabbed in the head multiple times by a known Blood gang member Jeremy Taylor.

66.) The evening of January 6th, 2022 plaintiff was stabbed, only (1) FDOC staff was outside in the yard supervising hundreds of inmates, indeed no FDOC staff members seen plaintiff's assailant maneuver himself out of H-dorm line and move across the compound and sneak into F-dorm line and quickly skip the inmates in line to position himself directly behind Plaintiff to viciously stab plaintiff in the head multiple times.

67.) In addition to paragraph's (64, 65) herein, by (FDOC) only separating gang affiliated inmates when gang affiliated inmates are found to have violated a major institutional rule; this policy, practice is not reasonable to protect neutron inmates as time shows, the policy allows and encourages gang affiliated inmates to continue their illegal crimes and activities off camera with the goal to make sure that their is no evidence to prove institutional rule violation, such policy ensures gang members goals and practice to commit physical assaults and stabbings on other inmates in areas where their are no cameras in place and the lapse of time but FDOC Ricky Dixon, S. Payne and Defendant on notice to take further action against these security threat groups in order to protect neutron inmates such as

21

Plaintiff.

68.)   With the lack of camera's to have video surveillance and inmates fear of retaliation by gang members if they were to provide a statement and cooperate with (FDOC) staff, this allows the gang affiliated inmates who ordered and/or who committed the stabbing to evade punishment altogether or to be placed in administrative confinement for investigation where inmates always claims he didn't do it and it was pure mistaken identity, (FDOC) subsequently releases these gang members back into gen pop to be housed around neutrons, and all defendants know this. Yet defendants still have these gang affiliated inmates housed with unaffiliated inmates.

69.)   Gulf institution where plaintiff was imprisoned at, didn't have any cameras outside in the prison yard on the compound in the area where inmates are frequently at and walks to and from the dining hall and other call-outs.

70.)   FDOC and defendants, Ricky Dixon, S. Payne, T. Gary, Colonel Rick knows of the substantial risk to plaintiff and other inmates safety when no camera's/video surveillance is on plaintiff and other inmates when exiting the dormitory. Defendant's failed to implement policies and procedures and practices to have cameras and video surveillance in place in the prison yard inside grounds despite knowing the apparent need to do so in order to provide for inmates safety in order to deter (STG) from assaulting neutrons and other inmates outside.

71.)   Defendant, S. Payne and (FDOC) Secretary Ricky Dixon are both aware of the Statewide practice of operating prisons in Florida with a shortage of staff and is aware of the danger to inmates and staff safety when their is insufficient staff  to monitor inmates movements on the institution compound through reports , inmates grievances and (FDOC) through their employment work history in corrections  yet defendants has not taken any "meaningful reasonable action" such as releasing non-violent inmates and/or combining/shutting a correct amount of  prisons down to bring corrections officers to other areas to reduce the danger on inmates going and returning from the institutions dormitory's, to meet the demand for inmates safety.

72.)   FDOC continues to operate Florida prisons knowing their is a lack of staff and the substantial risk it poses on a inmates safety especially at a institution such as Gulf C.I. that lacked adequate surveillance and house the violent inmates.

73.)   By information and belief plaintiff assailant fully planned the January 6th 2022 assassination attempt on plaintiff life and was fully aware that their would be no staff on that side of the institution compound where plaintiff was attacked.

74.)   By information and belief Def. S. Payne and Def. T. Gray, A Cochran, Colonel Ricks and all other defendants described herein failed to follow (FDOC) rules, regulations governing protective management reviewing plaintiff need for protection.

23

75.)    In Florida dept of corrections inmate handbook N1-091 revised (N19118) page 20. under security threat groups section states in part; security threat groups are formal or informal inmate groups, gangs, or organizations, or associations consistency of three or more members who have;

A.) A common name or common identifying signs, colors, or symbols.

B.) Members or associations who individually or collectively engage in or have engaged in a pattern of gang activity, criminal activity, or department rule violations; or

C.) Potential  to act in concert to pose a threat or potential threat to the public, staff, visitors, other inmates or offenders, or the secure and orderly operations of a institution.

"Security threat groups pose a threat to other inmates"

76.)  FDOC employees have by pattern and history failed to act to remedy clear federal violations and totally disregarded their legal duties to provide adequate and reasonable measures of safety and due care for *neutron* inmates housed in general population in (FDOC) institutions.

All Defendant's and (FDOC) fails to

A.) Compel its employees to comply with state and federal law relating to inmate safety.

B.) Report truthfully the uncontrolled level of violent acts by inmates on

24

inmates.

C.) Enforce administrative rules and regulations involving the tour of duty and conduct of employees.

D.) Ensure employees assigned to work living quarters of inmates are disciplined for falsely reporting (that they have conducted searches of inmates, persons, cells, and common areas, and allowing inmates to enter dormitory's who are not assigned or housed in that specific dorm.

E.) (Properly act on) reported acts of violence and crimes by inmates neglecting them.

F.) Separate inmates by transferring those with validated enemies rather then keeping them in the same institution.

G.) Investigate adequately, properly, within the limited power to do so acts of violence.

H.) Ensure violent crimes committed by inmates are prosecuted in accordance with the penal laws of the state of Florida.

I.) Fails to follow follow their own rules, regulations and procedures for keeping inmates safe from security threat groups and/or FDOC has failed to develop meaningful polices, procedures to keep neutron inmates safe from (Security Threat Groups).

J.) (FDOC) fails to not follow and/or enforce their subordinates to follow

Florida administrative code policies and procedures governing protective management that FDOC implemented to provide safety for incarcerated inmates.

K.) (FDOC) covers up stabbings and other assaults by gangs perpetrated on neutron inmates and other inmates, by falsely writing the incident report as a fighting report rather than a stabbing or weapon assault report.

77.) Defendants, Ricky Dixon, S. Payne, Colonel Ricks, T. Gray encouraged and ratified inmate on inmate assaults including but not limited to the 1 – 6-22 stabbing that occurred on Plaintiff by ratifying a state wide unwritten policy and practice of FDOC employees of not allowing inmates to be placed in protective management and by promoting FDOC employees at Gulf CI,. and other institutions who had a known history of being hard on "check in' and not allowing the inmates to receive protection.

*Check In's is (FDOC) historically known nickname for inmates who request protection from Gangs and Staff.*

78.) Defendants, Ricky Dixon, S. Payne, T. Gray, Colonel Ricks and administrators knew of the assaults on inmates occurring outside at Gulf C.,I. and other state correctional facilitates through daily reports, family complaints and anecdotal testimony from inmates, inmates grievances and long term death and injury statistics, yet Defendants failed to take reasonable measures to protect Florida inmates who are neutrons.

26

79.)   After Plaintiff was stabbed on 1- 6-22 Plaintiff was not offered any psychological or medical treatment, despite plaintiff's need for psychological medical treatment being obvious and apparent given the serious trauma Plaintiff had just endured from being stabbed in the back of his head.

80.)   Defendants. Payne and Ricky Dixon did not have any policies in place that provided inmates who were victims of serious trauma expedited psychological treatment.

81.)   Plaintiff and other inmates who needed psychological medical treatment is forced to follow normal routine procedures to receive psychological treatment, and medical passes to reduce the mental health symptoms that they just recently incurred from stabbings, It often takes months just to receive therapy much less psychiatric medication, whereby Plaintiff and other inmates are forced to continue to live in general population around security threat groups often  by violent gang membership organizations that had carried the assault, consequently Plaintiff's need for psychological medical treatment was delayed and his PTSD symptoms became worse.

82.)   By the lack of policies to address Plaintiff medical need for psychological medical treatment, which was obvious and apparent, plaintiff went through months with Post-traumatic stress disorder symptoms without receiving any treatment nor medical passes consequentially Plaintiff was forced to continue to be housed in

dormitories with heavy gang presence and violence that further made Plaintiff PTSD symptoms worse.

83.) The lack of policies to address Plaintiff need for expedited Post psychological treatment cause Plaintiff to be denied adequate and reasonable medical care.

84.) The need for (FDOC) and/or Centurion to make policies offering inmates such as Plaintiff Post-Psychological treatment was blatantly foreseeable given the long standing widespread history of inmate stabbings and apparent trauma that inmates had endured.

85.) Between 1-6-22 to April 2022 Plaintiff submitted multiple request forms and grievances requesting expedited psychological treatment as well for reasonable accommodations under the A.D.A. so Plaintiff could obtain safe housing, Plaintiff's request for psychological treatment was either ignored and/or delayed, consequently Plaintiff could not obtain or request the reasonable accommodation which he needed due to Plaintiff had not been officially diagnosed with PTSD.

86.) In August 2022 Plaintiff was seen by Centurion Mental Health Staff Ms. Summers who is a psychologist at Liberty C.I. and after a few visits was officially diagnosed with PTSD which was a direct and proximate result of the stabbing that was committed on Plaintiff 1-6-22.

28

87.) After 5 months of delay from receiving psychological medical treatment, Plaintiff was finally diagnosed with PTSD and was now a qualified individual with a disability under the A.D.A.

88.) On or about April 27th, 2022 plaintiff submitted a reasonable accommodation request form requesting for reasonable accommodation request form requesting for reasonable accommodation for safe housing to enable him to participate in services, activities, programs that (FDOC) provides.

89.) Plaintiff was not given a response back from (FDOC) regarding his accommodation request and (FDOC) response time was past due under (FDOC) rules and procedures governing responses to reasonable accommodation request.

90.) Plaintiff re-allege and incorporates the DC1-303 grievance form and response herein marked Exhibit (A) attached to this complaint.

91.) Plaintiff reasonable accommodations request was denied by Liberty C.I. A.W. of programs S. Ponder who falsely stated that FDOC at Liberty C.I. did not receive Plaintiff reasonable accommodation forms.

92.) In the month of August 2022 Plaintiff seen his mental health counselor - Summers and spoke to Ms. Summers about the mental health symptoms that he was having and his need for reasonable accommodation and safe housing outlined in Exhibit (A) attached herein.

93.)   Mental health staff Summer advised Plaintiff that he would need a medical pass to obtain the requested reasonable accommodation.

94.)   Mental health staff Ms. Summers walked across the hall to the medical department and spoke with Centurion DR who advised Ms. Summers that Plaintiff needed to fill out a sick call.

95.)   The very same day Plaintiff submitted a sick call to obtain the medical passes under the A.D.A.

96.)   In the month of August 2022, Plaintiff was seen by Centurion nurse Hodges who was assigned to see Plaintiff regarding his submitted sick call seeking medical passes under the A.D.A.

97.)   During the sick call interview, Nurse Hodges informed Plaintiff that Liberty, C.I. is not a A.D.A. Institution and that Plaintiff requested reasonable accommodation will more than likely be denied.

98.)   Nurse Hodges did not do an assessment on Plaintiff to determine Plaintiff need for the requested reasonable accommodations.

Nurse Hodges refused to refer Plaintiff to see the Medical doctor to interview Plaintiff's need for reasonable accommodations despite Plaintiff's persistent requests to do so.

99.)   During the August 2022 sick call interview Nurse Hodges was disinterested in performing her duties and attending to Plaintiff's need for reasonable accommodation.

100.) During the sick call interview Nurse Hodges abruptly ended the sick call interview when Plaintiff attempted to speak and tell his need and importance for his reasonable accommodation request.

101.) During the _____ 2022   sick   call   interview Plaintiff was polite and spoke in a respectable manner and tone, their was no security threat, yet Nurse Hodges ended the sick call and refused to let Plaintiff speak.

102.) The _____ 2022 sick call interview conducted by Nurse Hodges was a perfunctory sham medical sick call designed under the disguise that she performed her duty.

103.) Plaintiff exhausted his administrative remedies regarding the A.D.A. violation to the FDOC Bureau of inmate grievances and appeals, the Bureau of inmate grievances and Appeals approved of Liberty C.I. handling of Plaintiff requested reasonable accommodations.

104.) (FDOC) had no policies or procedures in place that provided inmates a receipt for proof of submission of a reasonable accommodation request and this lack of policy and procedure allows (FDOC) staff to improperly deny a inmates reasonable accommodation request by simply alleging in their response that they did not receive no reasonable accommodation form, this lack of policy and practice contributed to the violation of the American With Disabilities Act whereby violating Plaintiff's rights.

105.) FDOC lacks policy and procedures to provide inmates with a receipt for the submissions of informal and formal grievances contemporaneously at the time when inmates submits their grievances, this lack of policy allows FDOC and it's institutions including the Bureau of inmate grievances to respond falsely to a inmate grievance alleging that the inmate failed to file grievances to lower officials, which ultimately has the effect of ending a inmates appeal/grievance. This practice by (FDOC) is widespread and has a longstanding history that is deeply rooted in (FDOC) and happens to thousands of inmates throughout (FDOC) prison system and is used to return an inmate grievance.

106.) The above practice mentioned in paragraph herein started shortly after (FDOC) resided their policy and practice providing inmates a receipt for the submission of their informal/formal grievance.

107.) (FDOC) uses and abuses the practice described in paragraphs - herein whenever (FDOC) does not wish to respond officially to a inmate grievances or wish to avoid the grievance all together.

108.) (FDOC) Bureau of inmate grievances has been informed of the use and abuse of the practice described in paragraphs - herein, via reports, grievances but has failed to reinstate (FDOC) policy to provide inmates receipts contemporaneously at the time of the submission of the grievance or has failed to act meaningfully to stop the unlawful practice.

109.) Some of Plaintiff's claims to (FDOC) did not have available administrative remedies that plaintiff could reasonably be expected to exhaust given the stated practice alleged in paragraphs herein.

110.) Fla. Statute § 944.14. Supervisor of Correctional Institutions, enforcement of orders and regulations. "Subject to the orders, policies, and regulations established by the Department, it shall be the duty of the wardens to supervise the government, discipline, and policy of the State Correctional Institutions, and to enforce all orders, rules and regulations.

111.) Defendant's Ricky Dixon had implemented administrative management unit and close management unit as a protective measure to protect neutron inmates from gangs. However these protective measures are inadequate as history and practice has shown that they are in adequate, yet Ricky Dixon and defendant S. Payne failed to take further actions to protect neutron inmates from these security threat groups.

112.) Their is a long standing widespread history of neutron inmates constantly and frequently assaulted and extorted and terrorized by a gang affiliated inmates daily through (FDOC) Institutions amounting to a pervasive risk to neutron inmates and (FDOC) and Defendant S. Payne is aware of this through complaints from family, inmates, incident reports and longstanding injury statistics.

## CLAIMS FOR RELIEF

## COUNT I

### A.   FAILURE TO PROTECT

113.) Plaintiff reasserts and incorporates herein by reference all paragraphs 1-91 preceding the claims for relief section, above.

114.) The action and/or omissions, policies, practices, customs, lack of policies, unwritten policies and practices violated plaintiff Eight Amendment right under the U.S. Constitution to be free from deliberate indifference to his safety.

115.) The failure of defendant Jane Doe pm investigator to interview plaintiff requested witnesses and/or to interview any other witnesses and failure to retrieve and preserve other available evidence that was needed to substantiate plaintiff claims for protection violated his Eight Amendment right to be free from deliberate indifference to his safety.

116.) As a result of all defendant's actions and/or omissions by itself and/or in the cumulative effect of FDOC policies, unwritten policies and practices plaintiff received serious physical and emotional injuries.

## COUNTS II

## NEGLIGENT FAILURE TO PROTECT

117.) Defendants, Ricky Dixon, A. Cochran, S. Payne, T. Gray, Colonel Ricks, Jane Doe classifications OFC and Jane Doe protective management Inv. owed plaintiff a duty of reasonable care to protect him from assaults by other prisoners.

118.) Defendant's breach of duty resulted in serious physical and emotional injury and damages.

119.) The breach of duty proximately caused those damages.

## COUNTS III

## VIOLATIONS OF THE ADA AND REHABILITATION ACT (FDOC)

120.) Plaintiff re-alleges the Common Allegations as if fully set forth herein.

121.) Plaintiff is entitled to relief for disability discrimination against (FDOC) for violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., (hereinafter "ADA") which provides in pertinent part:

No qualified individual with a disability shall, by reason for such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

42 U.S.C. § 12132

Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage,

or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. § 39.130.

122.) Mr. Irons was disabled as defined at 42 U.S.C. § 12102(2), as he suffered a physical impairment that substantially limited one or more of his major life activities, including, but not limited to, mental health disability.

123.) Mr. Irons was a "qualified individual" as defined at 42 U.S.C. § 12102(2), as he suffered a physical impairment that substantially limited one or more of his major life activities, including, but not limited to , mental health disability.

Mr. Irons was a "qualified individual" as defined at 42 U.S.C. § 12131(2):

"Qualified Individual" means a person with a disability who meets the essential eligibility requirements for receipt of services or participation in programs or activities provided by the entity (with or without regard to any auxiliary aids or modifications).

124.) (FDOC) is a public entity that has violated Title II of the ADA.

125.) (FDOC) is an entity that receives federal funding.

126.) Liberty Correctional Institution is a facility and it's operation comprises a program and service for purposes of Title II of the ADA.

127.) Defendant (FDOC) authorized it's agents and employees to act for Defendant (FDOC) when they committed the ADA violations alleged herein. Defendants (FDOC)'s agents and employees accepted the undertaking of acting on behalf of (FDOC) when they committed the ADA violations alleged herein. Defendant (FDOC)'s agents and employees accepted the undertaking of acting on behalf of (FDOC) when they committed the ADA violations alleged herein. Defendant (FDOC) had control over it's agents and employees when they committed the ADA violations alleged herein.

128.) The ADA violations alleged herein and committed by Defendants (FDOC)"s agents and employees were done while acting within the course and scope of their employ and/or agency with Defendant (FDOC). Thus, Defendant (FDOC) is vicariously liable for the actions of it's agents and employees when they committed the ADA violations alleged herein.

129.) Mr. Irons need for a reasonable accommodation was known and obvious.

130.) Defendant (FDOC), it's employees, and agents knew and/or should have known of Mr. Irons need for a reasonable accommodation.

131.) (FDOC), it's agents and employees, acted intentionally and/or with deliberate indifference to Mr. Irons need for a reasonable accommodation by:

a. failure to accommodate his mental health disability;

b. failing and intentionally refusing to train Defendant V employees regarding the safe management and safe housing of mentally ill inmates and safe housing;

132.) As a proximate result of defendant (FDOC)'s, it's employees', and agents' failure and intentional refusal to provide Mr. Irons with a reasonable accommodation, he suffered physical harm and was denied a meaningful opportunity to participate in (FDOC) program's and activity's including but not limited to safe housing, food service, and etc.

## **RELIEF REQUESTED**

WHEREFORE, plaintiff request that this court grant the following relief:

133.) A. Declare that Defendant's A. Cochran, S. Payne, T. Gray, Ricks, Jane Doe violated plaintiff Eighth Amendment rights and other rights when they failed to protect him from a known risk of physical harm.

134.) B. Issue an injunction requiring that defendants separate plaintiff from gang affiliated inmates and to protect plaintiff from physical assaults by inmates.

135.) C. Award compensatory damages and punitive damages for plaintiffs physical and emotional injuries against defendant.

39

136.) D. Jury trial on all triable issues

137.) E. Grant plaintiff such other relief as it may appear plaintiff is entitled to.

138.) F. Issue on preliminary injunction and temporary order requiring Defendants to separate plaintiff from gang members and to house him at a protective management institution.

## V.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies *(grievance procedures)* before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.* If the case is dismissed for failure to exhaust or for any reason, you will still be required to pay the full filing fee and the dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Therefore, please consider whether you have fully exhausted your remedies before proceeding with this action.

## VI.   PRIOR LITIGATION

*This section requires you to identify your prior litigation history. Be advised that failure to disclose all prior state and federal case—including, but not limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case. You should err on the side of caution if you are uncertain whether a case should be identified.*

> **ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

A.   Have you had any case in federal court, including federal appellate court, dismissed as frivolous, as malicious, for failure to state a claim, or prior to service?

   [ ] Yes [X] No - Not to the best of my knowledge/understanding.

B.   Have you filed other lawsuits or appeals in *state or federal court* dealing with the same facts or issue involved in this case?

   [ ] Yes [X] No

C.   Have you filed any other lawsuit, habeas corpus petition, or appeal in *state or federal court* either challenging your conviction or relating to the  conditions  of your confinement?

[X] Yes      [ ] No

If "Yes," identify all lawsuits, petitions and appeals: *(See Page No.: (5) of this complaint)*

## VII.  CERTIFICATION

1. I declare, under penalty of perjury, that all of the information stated above and included on or with this form, including my litigation history, is true and correct.

/s/ _Derease L. Irons_

Derease L. Irons, DC# V35327

2. Additionally, as required by Federal Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complain:(1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

3. I understand it is my obligation to timely notify the Clerk's Office if there is any change to my mailing address and that my failure to do so may result in a dismissal of the action.

Date: _9-12-22_    Plaintiff's Signature: _Derease L. Irons_

Printed Name of Plaintiff: Derease L. Irons

Correctional Institution:  Liberty Correctional Institution

Address: 11064 N.W. Dempsey Barron Rd., Bristol, Florida 32321

**I certify and declare, under penalty of perjury, that this complaint was *(check one)* [X] delivered to prison officials for mailing or [ ] depositioned in the prison's mail system for mailing on the _12th_ day of ~~August~~ September, 2022.**

Signature of Incarcerated Plaintiff: _Derease Irons_

43

MAILED/FILED
WITH AGENCY CLERK

JUL 1 3 2022

Department of Corrections
Bureau of Inmate Grievance Appeals

*Exhibit*

## PART B - RESPONSE

| IRONS, DEREASE | V35327 | 22-6-19243 | LIBERTY C.I. | G2108U |
|---|---|---|---|---|
| NAME | NUMBER | GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative review has been received and referred to the ADA Coordinator, who provided the following:

Based on the information provided, the ADA Department has not received any DC2-530A forms from you since July 2020. Furthermore, an inquiry was conducted and it was determined that you need to utilize the sick call process regarding your medical issues, as the ADA department has no authority over an inmate's medical files nor do they prescribe anything to inmates.

Based on the foregoing, your appeal is denied.

T. Bowden

*T. Bowden*

| | | |
|---|---|---|
| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | DATE |

ADA
Exhibit

**FLORIDA DEPARTMENT OF CORRECTIONS**
**REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL**

RECEIVED
JUN 28 2022
Department of Corrections
Bureau of Inmate Appeals

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ☐ Warden    ☐ Assistant Warden    ☒ Secretary, Florida Department of Corrections

From or **IF Alleging Sexual Abuse, on the behalf of:**

| Harris, Dewone | V35327 | Liberty C.I. |
|---|---|---|
| Last    First    Middle Initial | DC Number | Institution |

| Part A – Inmate Grievance | 22-6-19243 |
|---|---|

I reallenge and Incorporate the attached

Statements I stated In my 303 grievance at

the Institutional hereIn.
                        The Institution did

receive my request for reasonable accomodation

and Instead of honoring my greivance and

providing me the requested reasonable accomodation

Sought In the grievance, The Institution Intentionally

Invades my reasonable accomodation request by claiming

they never received my griev request which Is false,

This grievance Is being filed to fully exhaust

my grievances, to file a 1983 civil right suit

for violation of the A.D.A.

| 6/19/22 | Dewone Harris V35327 |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

**\*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:**    / 

\#    Signature

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

JUN 21 2022    Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: ASST WARDEN PROGRAMS   Institutional Mailing Log #: __005861__   GM
                        (Date) Liberty C.I.                                    (Received By)

24c
2205(120)081

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INSTITUTION/FACILITY | CENTRAL OFFICE |
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 11/13)                Incorporated by Reference in Rule 33-103.006, F.A.C.

*Exhibit*

## PART B - RESPONSE

| IRONS, DEREASE | V35327 | 2205-120-081 | LIBERTY C.I. | H2108U |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Your request for administrative remedy or appeal has been received, reviewed, and evaluated and responded to as follows:

A DC2-530A has not been received from you requesting a modification or accommodation. Once the required form is received, your request will be reviewed.

Therefore, based on the information your request for Administrative Remedy or Appeal is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, providing attachments as required by 33-103.007(3) (a) and (b), and forwarding your complaint to the Bureau of Inmate Grievance Appeals, 501 South Calhoun Street, Tallahassee, Florida 32399-2500.

S. Ponder, AWP                    W. Summers, WARDEN

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 6-15-22 |
|---|---|---|
| | | DATE |

Mailed to Inmate:
6/15/22

FLORIDA DEPARTMENT OF CORRECTIONS
REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

*Exhibit*

☐ **Third Party Grievance Alleging Sexual Abuse**

TO: ■ Warden   ☐ Assistant Warden   ☐ Secretary, Florida Department of Corrections
From or IF Alleging Sexual Abuse, on the behalf of:

| Imms,Derease L | V35327 | Liberty C.I |
|---|---|---|
| Last     First     Middle Initial | DC Number | Institution |

---

**Part A – Inmate Grievance**

This is a Direct grievance being filed pursuant to F.A.C. chapter 33-103.006 (3)(h) for violation of The American Disabilities Act.

   On or About April 27th 2022, I requested via request form to the Institution designated ADA cordinator to be given reasonable accomodations for my diagnosed Post Tramatic Stress disorder, I was not given a response back nor have I been provided the requested reasonable accomodations.

   On January 6th 2022 I was stabbed on the top and back of my head by a gang affiliated Inmate- where I received medical attention, Then was almost stabbed again by a gang member when I was transferred to Taylor C.I; As a direct result of the stabbing and attempted stabbing by these gang members I have PTSD which is documented In my medical file. My PTSD Mental Illness substantially limits me from sleeping, watching televison, using the phone and kiosk etc because of my constant paranoia and hypervigilant behavior, When I need to walk down to the chow hall I have panic attacks and flash backs thinking Im going to be stabbed or living thinking of the time I was actually stabbed, especially when Im required to be locked In the cage with several other gang members upon exiting the chow hall, The lack of reasonable accomodation to accomadate my

| 5-16-22 | *[signature]* DC#V35327 |
|---|---|
| DATE | SIGNATURE OF GRIEVANT AND D.C. # |

---

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS:

     Ø / *[signature]*
     #     Signature

2205-120-081      13F

**INSTRUCTIONS**

This form is used for filing a formal grievance at the institution or facility level as well as for filing appeals to the Office of the Secretary in accordance with Rule 33-103.006, Florida Administrative Code. When an appeal is made to the Secretary, a copy of the initial response to the grievance must be attached (except as stated below).

When the inmate feels that he may be adversely affected by the submission of a grievance at the institutional level because of the nature of the grievance, or is entitled by Chapter 33-103 to file a direct grievance he may address his grievance directly to the Secretary's Office. The grievance may be sealed in the envelope by the inmate and processed postage free through routine institutional channels. The inmate must indicate a valid reason for not initially bringing his grievance to the attention of the institution. If the inmate does not provide a valid reason or if the Secretary or his designated representative determines that the reason supplied is not adequate, the grievance will be returned to the inmate for processing at the institutional level pursuant to F.A.C. 33-103.007 (6)(d).

Receipt for Appeals Being Forwarded to Central Office

Submitted by the inmate on: _____   Institutional Mailing Log #: _____   _____
         (Date)                                             (Received By)

| DISTRIBUTION: | INSTITUTION/FACILITY | CENTRAL OFFICE |
|---|---|---|
| | INMATE (2 Copies) | INMATE |
| | INMATE'S FILE | INMATE'S FILE - INSTITUTION/FACILITY |
| | INSTITUTIONAL GRIEVANCE FILE | CENTRAL OFFICE INMATE FILE |
| | | CENTRAL OFFICE GRIEVANCE FILE |

DC1-303 (Effective 11/13)      Incorporated by Reference in Rule 33-103.006, F.A.C.

Exhibit

documented disability denies me access
to safe housing and services and activities
that FDOC offers beecause me being housed
around several active gang members and my PTSD Diagnosis.

Because my PTSD Documented diagnosis
substantially limits me from participating
In the above reference FDOC Services
and activities I respectfully request
Liberty CI/FDOC modify their policies
and provide me with the following reasonable
accomodations In order for me to meaningfully
participate In "SAFE Housing" and use the
phone, Kiosk, TV ete which Is a service
or activity that FDOC provides In each
dormitory.           REQUESTED REASONABLE
ACCOMODATIONS.

1.) House me ~~acusy~~ In I Dorm wing
 One where their are hardly no gang members
and violence Is low and ensure that I
dorm wing ~~one~~ remains the 50 and older dorm

2.) Allow my breakfast, lunch and Dinner
to be brought to me through the Confinement
Cart that already comes to I-dorm

3.) provide me a pass allowing me to
not stand/sit with a group of people
when attending call-outs.

The above requested reasonable accomodation will allow me to sleep more peacefully and use the Institutions services and activities In the dormitory and eat my meals In a meaningful manner

"Failing to accomodate a person's known disability, which thereby impacts that persons access to safe housing and living conditions, may Constitute a denial of services." Walton v. Fla. Dept. of Corr, 2019 U.S. Dist Lexis 81007 Decided May 14th 2019.

See, e.g. Arenas, 2018 U.S. Dist. Lexis 26981 2018 WL 988099 (" Stating that access to safe housing may Constitute a service or benefit under the A.D.A.

Further FDOC providing providing meals, phone privileges, TV, Kiosk and areas for Inmates to sleep are all services or activities that FDOC provides and the failure to accomodate my disability is a Violation under the A.D.A.

LEGAL

US POSTAGE PITNEY BOWES

ZIP 32321
02 4W
0000375313

$ 003.60⁰
SEP 12 2022

Mailed from
Liberty Correctional institution

Derease L. Irons
Dc#V35327
Liberty Correctional Institution
11064 N.W Dempsey Barron Rd
Bristol FL 32321

United States District Court
1 N. PALAFox Street
Pensacola, FL 32502

Legal and/or Privileged Mail
Mailed From
Liberty Correctional Institution

VED   SEP 15 2022